UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

----------------------------------------------------------x
In re:                                                    :        Chapter 11
                                                          :
All Phase Electrical Contracting, Inc.,                   :        Case No.: 08-50494 (AHWS)
    Debtor.                                               :
----------------------------------------------------------x

APPEARANCES:

| | |
|---|---|
| Mario DeMarco, Esq.<br>Law Offices of Mario DeMarco<br>8 South Main Street<br>Port Chester, NY 10573 | Attorney for the Debtor |
| Stephen M. Kindseth, Esq.<br>Zeisler & Zeisler, P.C.<br>558 Clinton Avenue<br>Bridgeport, CT 06605 | Attorney for the Debtor's Principal,<br>Anthony L. Isola |
| James C. Graham, Esq.<br>Kristen B. Mayhew, Esq.<br>Pepe & Hazard LLP<br>225 Asylum Street<br>Hartford, CT 06103 | Attorneys for the Movant, Colonial<br>Surety Company |
| Lawrence R. Reich, Esq.<br>Reich Reich & Reich, P.C.<br>235 Main Street<br>White Plains, NY 10601 | Attorney for Village of Scarsdale |

**MEMORANDUM AND ORDER ON COLONIAL SURETY COMPANY'S
MOTION FOR RELIEF FROM STAY**

Alan H. W. Shiff, United States Bankruptcy Judge:

    The movant, Colonial Surety Company, seeks relief from the automatic stay to terminate the performance and payment bonds it issued on the debtor's behalf in connection with an electrical contract between the debtor and the Village of Scarsdale.

For the reasons that follow, the motion is denied.

## BACKGROUND

On December 24, 2002, the debtor and its principal executed a General Indemnity Agreement ("GIA") with Colonial Surety Company for the purpose of "indemnify[ing] Colonial and holding[ing it ] harmless with respect to any claims made in connection with bonds issued by Colonial for the [d]ebtor . . ." Joint Stipulation of Facts ("Stip.") at ¶ 4, dated May 13, 2009.  The GIA requires  the debtor to pay Colonial a premium "as and when each and every Bond is executed" based on the price of the underlying contract.  *Id.* at Exh. A, ¶ 2.  On June 6, 2008, the debtor, an electrical contractor, filed this chapter 11 petition.

On October 18, 2007, the debtor contracted with the Village of Scarsdale, Westchester County, New York, to perform electrical work at the Ardsley Road Pumping Station ("Scarsdale Contract").  *Id.* at ¶ 7.  The Scarsdale Contract requires, that the debtor's performance be bonded.  In accordance with the GIA, that requirement was satisfied when Colonial issued Payment and Performance Bonds Nos. CSC-215306 (collectively the "Bonds") to Scarsdale on the debtor's behalf.  *See id.* at Exhs. C and D.  In accordance with the GIA and in exchange for the Bonds, the debtor paid Colonial a bond premium of $12,002.  *Id.* at ¶¶ 8-9.  The Bonds provide, in relevant part, that the debtor and Colonial "jointly and severally, bind themselves . . . to [Scarsdale] for the performance of the [Scarsdale Contract] . . . and to pay for labor, materials, and equipment . . . for use in the performance of the Contract . . ." *Id.* at Exhs. C, ¶ 1, and D, ¶ 1.  The parties agree that the Bonds are an integral part of the Scarsdale Contract.  *See id.* at ¶ 8.

The debtor began work on the Scarsdale project in approximately December 2007. *Id.* at ¶ 10. In approximately March 2008, Scarsdale suspended the project due to the discovery of hazardous material. *Id.* at ¶ 11. At the July 14, 2009 hearing on the instant motion, Scarsdale and the debtor stated that the suspension issues had been resolved, and the debtor had satisfied Scarsdale that it could complete the project. Work on the project is scheduled to continue in September 2009. *Report by Scarsdale* (dkt. # 162) at 2, dated June 5, 2009. However, Colonial argues that the debtor's completion of the unfinished project is conditioned on the viability of the Bonds, and it has the right to terminate the Bonds because they are executory contracts that cannot be assumed under § 365(c)(2) of the bankruptcy code.

## DISCUSSION

In pertinent part, § 362(d)(1) of the bankruptcy code provides that ". . . the court shall grant relief from the stay . . . - (1) for cause . . ." 11 U.S.C. § 362(d)(1). Although the debtor has the burden of proof on the issue of cause, *see* § 362(g), that obligation is predicated on Colonial's duty to make a cognizable "initial showing":

> Neither the statute nor the legislative history defines the term 'for cause' . . . The burden is on the moving party to make an initial showing of 'cause' for relief from the stay. Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay

*In re Mazzeo,* 163 F.3d 139, 142 (2d Cir. 1999) (internal citations omitted).

Colonial advances the following syllogism:

(1)   The GIA is an integral part of the Scarsdale Contract.

(2)   The Bonds were issued under the GIA.

(3)  The Bonds are executory contracts because the obligations of Colonial and the debtor are materially underperformed.

(4)  The Bonds are financial accommodations which, as executory contracts, cannot be assumed.  *See* § 365(c)(2).

(5)  Therefore, Colonial has established an initial showing that there is cause for relief from the stay to terminate the Bonds.

The debtor and its principal argue that Colonial's logic is flawed because the Bonds are not executory contracts.

The bankruptcy code does not define an executory contract.  The parties, however, agree that the so-called Countryman definition should govern this analysis.  *See* Colonial's Supp. Br. (dkt. # 151) at 3; Debtor's Opp'n Br. (dkt. # 152) at 4.  That definition provides that an executory contract is one "under which the obligations of both the [debtor] and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."  *Id.* (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)).  *See also In re Penn Traffic Co.,* 524 F.3d 373, 379 (2d Cir. 2008) (noting the adoption by most courts of the Countryman definition).

Applying the Countryman definition, the analysis turns on whether, as Colonial argues, *both* it and the debtor have underperformed their respective obligations as to the Bonds.  The issue of a party's performance under a contract should be viewed by what are, not what may be, a party's duties.  That is, the executory nature of a contract should be examined as of the petition date or, at the latest, the date on which the

relevant motion is filed, which in this case is the date of Colonial's instant stay relief motion (collectively, the "operative dates"). *See Penn Traffic Co., supra,* 524 F.3d at 379.

As to the debtor: Colonial argues that the debtor has underperformed its obligations because (1) it has a duty to complete the Scarsdale Contract; (2) it may owe additional premiums in the event of cost overruns; and (3) it could be required to turnover to Colonial any payments it received from Scarsdale if it defaults on the Scarsdale Contract. *Id.* at 7-8. None of these arguments are persuasive.

The first prong of Colonial's argument is unavailing because, as of the operative dates, the debtor did not have an obligation to complete the Scarsdale Contract. Work on the project had been suspended by Scarsdale. *See*, *supra*, at 3. At the July 14 lift stay hearing, the debtor and Scarsdale reported that the suspension issue had been resolved and that the debtor could recommence work on the Scarsdale Contract in September 2009. *See id.* Therefore, the only potential delay to the completion of the Scarsdale Contract is Colonial's current attempt to terminate the Bonds, the issuance of which are a condition precedent to the Contract's viability. The other two obligations claimed by Colonial to be underperformed are merely contingencies which may never materialize.

Similarly, neither that analysis nor that result would change by considering the GIA in conjunction with the Bonds, as Colonial urges. Colonial's Supp. Br. at 5. On the operative dates the underperformed obligation claimed by Colonial, i.e., the debtor's payment of additional premium in the event of a contract overrun, *id.* at 7, was merely a contingency.

The conclusion that the debtor had not underperformed its obligations on the operative dates is dispositive of this matter.  Nonetheless, even if there had been merit to Colonial's argument regarding the debtor's underperformance, the conclusion that the Bonds were not executory contracts would be warranted because the Bonds were issued, and that was all that was required of Colonial on the operative dates.  Any potential obligation of future performance is speculative and insufficient to create an executory contract on the operative dates.  In sum, both the debtor *and* Colonial performed the obligations required of them as of the operative dates.

Accordingly, Colonial has not made an initial showing that there is cause for relief from the automatic stay under § 362(d)(1).  Nonetheless, even if Colonial had satisfied that showing so that the debtor would have to demonstrate that there was not cause for relief from the stay, that burden has been satisfied for the same reasons that Colonial has not made an initial showing.  That is, the debtor has persuasively argued that the Bonds were not executory contracts because, on the applicable operative dates, it had paid the requisite Bonds premium, and Colonial had executed the requisite Bonds, so that there was no unperformed obligation owed by either party.

Accordingly, Colonial's motion is denied, and
IT IS SO ORDERED.


Dated in Bridgeport, Connecticut, on this 31 day of July 2009.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge